RECEIVED
IN ALEXANDRIA, LA.
MAR 27 2014
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| DOUGLAS L. HAYES | : | DOCKET NO. 2:13-2392 |
| VS. | : | JUDGE TRIMBLE |
| ASBESTOS, CORP., LTD, ET AL | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the court is "Ford Motor Company's Rule 12(B)(6) Motion to Dismiss Plaintiff's Complaint for Damages, Amended Complaint for Damages and Second Amended Complaint for Damages" (R. #32). Defendant Ford Motor Company ("Ford") moves to dismiss plaintiff's claims of negligence, gross negligence, intentional tort, breach of warranty, maritime strict products liability under § 402(a) of the Restatement (Second) of Torts[1] and punitive damages pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### FACTUAL ALLEGATIONS

Plaintiff, Douglas L. Hayes, suffered from malignant mesothelioma, a type of cancer caused by exposure to asbestos. In his complaints, as amended, plaintiff alleges that while living on the family farm he was exposed to asbestos from birth until the late 1960s from his father's clothing (second hand exposure). He alleges direct exposure to asbestos from 1969 to 1982 while working

---

[1] Paragraph 32 of plaintiff's Second Amended Complaint alleges that:

Defendants' breaches of duty under traditional maritime strict liability standards, as restated and summarized in § 402(a) of the Restatement (Second) of Torts, as described herein proximately, caused, or contributed to cause, the Decedent to contract mesothelioma, which is permanent and terminal.

on 3 Case tractors on the family farm– specifically in gaskets, packing, valves and pumps. From 1993 through the early 2000s, Plaintiff worked as a salesman at the Oustalet car dealership in Jennings, Louisiana which sold Ford and Toyota vehicles. Mr. Hayes alleges that he daily entered the service department and was exposed to asbestos from various asbestos-containing products or equipment, including, but not limited to brakes, clutches, and/or gaskets. The products were allegedly manufactured and/or sold by Ford Motor Company ("Ford"). The complaint, as amended, names several defendants, (Ford, Toyota Motor Sales USA, Inc., Asbestos Corp. Ltd., Honeywell International, Inc., and C N H America, LLC[2]) who allegedly exposed Mr. Hayes to their products containing asbestos during different time intervals.

The instant lawsuit was filed on July 31, 2013. Plaintiff was first diagnosed on June 10, 2013; he passed away on October 4, 2013. In the third amending complaint, plaintiff's two surviving sons have asserted survival and wrongful death claims as well as a products liability claim pursuant to the Louisiana Products Liability Act.

## RULE 12(B)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "[3] Subsumed within the rigorous standard of the Conley test is the

---

[2] Named in the Complaint as Case New Holland, Inc.

[3] Hitt v. City of Pasadena, 561 F.2d 606,608 (5th Cir. 1977)(per curium) citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, (1957)).

requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged.[4] The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true.[5] In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.[6] "In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. . . ."[7] "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[8] "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."[9]

Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it demands "more than an unadorned, the defendant-unlawfully-harmed-me accusation."[10] A complaint that offers "labels and conclusions:" or "a formulaic recitation of the elements of a cause of action will not do."[11] Nor does a complaint

---

[4] Elliot v. Foufas, 867 F.2d 877, 880 (5th Cir. 1989).

[5] Oppenheimer v. Prudential Securities, Inc., 94 F.3d 189, 194 (5th Cir. 1996).

[6] Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1137 (5th Cir. 1992).

[7] Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992).

[8] Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

[9] Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995).

[10] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).

[11] Id.

suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."[12]

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[13] "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[14]

## LAW AND ANALYSIS

The Louisiana Products Liability Act ("LPLA") went into effect on September 1, 1988.[15] The LPLA applies only to causes of action that accrued on or after September 1, 1988.[16] "A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter."[17] "For causes of action arising after the effective date of the LPLA, negligence, strict liability and breach of express warranty are not available as theories of recovery against a manufacturer, independent from the LPLA.[18] "The exclusivity of LPLA does not allow for theories of liability based on fraud [or] breach of implied warranty."[19]

In the complaint, plaintiff alleges that he was exposed to asbestos from 1993 until 2000 when he worked as a salesman at the dealership which sold Ford vehicles. Ford argues that if plaintiff's

---

[12] Id., at 557, 127 S.Ct. 1955.

[13] Id., at 570, 127 S.Ct. 1955.

[14] Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S.Ct. 1937, 1940 (2009).

[15] LSA–R.S. 9:2800.58.

[16] Brown v. R.J.Reynolds Tobacco Co., 52 F.3d 524, 527 (5th Cir. 1995).

[17] LSA--R.S. 9:2800.58.

[18] Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 261 (5th Cir. 2002).

[19] Barrette v. Dow Agrosciences, L.L.C., Civ. Action 02-1677, 2002 WL 31365598 (E.D. La. Oct. 18, 2002).

cause of action accrued after the effective date of the LPLA on September 1, 1988, then the LPLA is plaintiff's exclusive remedy in this matter.[20] Ford maintains that any cause of action outside of the LPLA must be dismissed because of its exclusivity.

As noted previously, Mr. Hayes, the original plaintiff passed away in October 2013; the instant action is now being prosecuted by decedent's two sons, Chad and Chris Hayes, hereinafter referred to as plaintiffs. Also, in the amended complaint, plaintiffs have pled in the alternative, claims pursuant to the LPLA.

Plaintiffs attempt to argue that the LPLA does not apply to this case because Mr. Hayes' initial exposure was prior to the effective date of September 1, 1988 when he was on the family farm. Plaintiffs suggest that the harmful asbestos exposures are cumulative in effect, each adding to the other until the disease is manifested. Plaintiffs also argue that the pre-manifestation asbestos exposures are indivisible in their effects such that it is impossible to completely segregate the effects of one from another in an individual's history. Thus, plaintiffs maintain that their father's first tortious exposures occurred prior to the enactment of the LPLA. Plaintiffs rely on Cole v. Celotex Corp.,[21] which determined that "the key relevant events giving rise to a claim in long-latency occupational disease cases are the repeated tortious exposures resulting in continuous, on-going damages, although the disease may not be considered contracted or manifested until later."

Ford relies on Austin v. Abney Mills,[22] which instructs that a plaintiff's cause of action in

---

[20] Citing Brown, supra.

[21] 599 So.2d 1058, 1066 (La. 1992).

[22] 2001-1598 (La. 9/04/02), 824 So.2d 1137, 1154 (La. 09/04/02) quoting Cole v. Celotex Corp., 599 So.2d 1058, 1063 (La. 1992).

5

a long-latency occupational disease case accrues "when the exposures [to the harmful substance] are significant and such exposures later result in the manifestation of damages."[23] Ford maintains that Louisiana law has repeatedly applied the law in effect at the time of exposure to govern the rights and remedies between the parties.

Plaintiffs rely on Pitre v. GAF Corp.,[24] wherein the court citing Cole v. Celotex held that "the key relevant events giving rise to a claim in long-latency occupational disease cases are the repeated tortious exposures resulting in continuous, on-going damages, although the disease may not be considered contracted or manifested until later."[25] Plaintiffs also rely on Anderson v. Avondale Industries, Inc.,[26] which held that "[o]nce a cause of action accrues, a party has a vested right in the cause of action that a new substantive law cannot take away." In Anderson, the court acknowledged that in Pitre, the First Circuit declined to apply the LPLA in a product liability action for wrongful death from cigarette and asbestos exposures because the decedent's exposures occurred prior to the LPLA's enactment.

Ford argues that this case is distinguishable from the cases cited by plaintiffs because this case involves separate alleged exposures from separate and distinct defendants and/or sources. Decedent alleged in his complaint that he was exposed to asbestos while working for the dealership from 1993 until 2000. Therefore, as to defendant Ford, the asbestos exposure was after the LPLA

---

[23] Id., 824 So.2d at 1137.

[24] 97-1024, 705 So.2d 1149, (La. App. 1 Cir. 12/29/97), writ denied, 98-0723, 749 So.2d 666 (La. 11/19/99).

[25] 599 So.2d at 1066.

[26] 798 So.2d 93 (La. 2001).

was enacted making it the exclusive remedy. Ford argues that applying pre-LPLA law defies logic and the law because it would subject Ford to a standard of liability that was repealed long before decedent was allegedly expose to asbestos from Ford products. Furthermore, it would be illogical to apply the pre-LPLA law to Ford because of an unrelated defendant's (Case New Holland) alleged exposure of asbestos to decedent some 30 years prior to when decedent was allegedly exposed to the Ford defendant's products containing asbestos.

The court agrees with Ford that it would be illogical to begin the accrual period as to Ford to a period of time that involved an unrelated defendant's alleged exposure to asbestos. Such an application of the law would indeed hold Ford to a repealed legal standard of conduct solely because another unconnected defendant allegedly violated that standard years before the decedent ever encountered a Ford product. The cases cited by plaintiff did not involve separate and distinct defendants who were unrelated in time, space and/or affiliation. Even though we recognize that the jurisprudence follows the "significant tortious exposure" theory as enunciated in Cole,[27] we cannot fathom how Mr. Hayes could potentially be divested of a property right[28] prior to September 1, 1988, considering that he had no connection with Ford products until he began his employment in 1993. Thus, we find that as to defendant Ford, the LPLA is applicable as the exclusive remedy.

Ford maintains that plaintiff's punitive damages claims as to defendant Ford must be

---

[27] Even in Cole, in determining the trigger or timing of insurance coverage in long-latency occupational diseases cases, the court adopted an exposure theory "which provides that coverage is triggered by the mere exposure to the harmful conditions *during the policy period.*" 599 So.2d at 1076.(emphasis added). Here, it cannot be said nor has it been alleged that defendant Ford exposed Mr. Hayes to asbestos prior to 1988.

[28] "Once a party's cause of action accrues, it becomes a vested property right that may not constitutionally be divested." Cole, 599 So.2d at 1063.

7

dismissed because plaintiff has failed to allege that Ford was engaged in the activities punishable by Louisiana Civil Code Article 2315.3. In other words, plaintiffs have failed to state a cause of action entitling them to relief under the article because they have failed to allege that Ford's alleged conduct "occurred in the storage, handling or transportation of hazardous or toxic substances".[29] Plaintiffs do not address this argument in their opposition. After reviewing the complaints, as amended, the court agrees with Ford that the complaint fails to allege facts that would entitle plaintiffs to an award of punitive damages.

## CONCLUSION

For the reasons set forth above, the court finds that the LPLA applies to plaintiffs' claims against defendant Ford; therefore, plaintiffs' claims of negligence, strict liability, intentional tort, fraud, maritime strict liability,[30] and/or breach of warranty will be dismissed. The court further finds that plaintiffs have failed to allege facts to establish their claim for punitive damages. Accordingly, plaintiffs' claims for punitive damages against defendant Ford will be dismissed.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 27th day of March, 2014.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[29] La. C.C. art. 2315.3.

[30] Plaintiff did not challenge and/or address this cause of action. To the extent that it was alleged, there are no facts that would support a claim under maritime law.