RECEIVED
USDC, WESTERN DISTRICT OF L.
TONY R. MOORE, CLERK
5 / 28 / 15
JT

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

DOUGLAS L. HAYES                              CIVIL ACTION NO. 2:13-2392

VERSUS                                       JUDGE JAMES T. TRIMBLE, JR.

ASBESTOS CORP. LTD, ET AL                    MAG. JUDGE KAY

## MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment" (R. #86) filed by defendant CNH America, LLC[1] ("CNH") wherein the mover seeks to have the claims asserted against it dismissed pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, the motion will be granted dismissing this defendant with prejudice.

## STATEMENT OF FACTS

Plaintiff, Douglas Hayes, filed the instant lawsuit against several defendants, including the mover, CNH America, LLC, alleging that "[a]s a result of Defendants' wrongful conduct, [plaintiff] suffer[ed] from malignant mesothelioma, a type of cancer caused by exposure to asbestos."[2] Mr. Hayes died after filing this lawsuit and his surviving sons, Chad Hayes and Christopher Hayes, have asserted a wrongful death and survival claim.[3]

In his complaint, Mr. Hayes alleges that he was exposed to asbestos while living on the family farm in the following ways: (1) secondary exposure from father's clothing from birth to the late 1960's, (2) while working on three (3) Case [CNH] tractors, (3) and by being exposed to

---

[1] Plaintiffs' complaint names this defendant as Case New Holland, Inc.
[2] ¶ 1, R. #1.
[3] Third Amended Complaint, ¶2, R. #42.

asbestos containing products such as gaskets, packing, valves and pumps.[4] Mr. Hayes also alleges that he was exposed to asbestos from other products either manufactured or supplied by co-defendants, Ford Motor Company, Toyota Motor Sales and Honeywell International (successor-in-interest to Bendix Corporation[5]) while working as a salesman at the Bubba Oustalet Dealership ("dealership") from 1993 through early 2000.

Mr. Hayes was born in 1945 and grew up on his family farm in Welsh, Louisiana. He attended McNeese State University from 1962 to 1966 and served in the military from 1967 until 1968. He then returned to the family farm and remained there until 1983.  Mr. Hayes sold the farm equipment and thereafter worked for Shepherd Oil Company, which operated an ethanol production plant, for ten (10) years. In May of 1993, Mr. Hayes began his employment as a salesman at the dealership, where he remained employed until his death.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[6] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[7] A dispute about a material fact is "genuine" if the evidence is such that a

---

[4] ¶ 13, R. #42.
[5] Corporate Disclosure Statement, R. #26.
[6] Fed. R. Civ. P. 56(c).
[7] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

reasonable jury could return a verdict for the non-moving party.[8] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[9] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[10]  The burden requires more than mere allegations or denials of the adverse party's pleadings.   The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[11] There is no genuine issue of material fact if, viewing the evidence in the light more favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[12] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.[13]

## LAW AND ANALYSIS

Defendant, CNH, maintains that there is no evidence that Mr. Hayes was exposed to asbestos in any way that could have "substantially caused" him injury because there is no evidence that the valve cover gaskets contained asbestos, and the evidence is insufficient to sustain a claim that the oil pan gaskets exposed Mr. Hayes to asbestos in any way that substantially caused his illness and death. CNH asserts that Mr. Hayes and his experts assumed that the gasket work he performed on his family farm resulted in his "exposure" to asbestos –

---

[8]  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).
[9]  Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).
[10]  Anderson, 477 U.S. at 249.
[11]  Celotex Corp. v. Catrett,  477 U.S. 317, 324 (1986).
[12] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[13] Anderson, 477 U.S. at 249-50.

as Louisiana law defines "exposure." Thus, CNH argues that it is entitled to judgment dismissing plaintiffs' claims against it, with prejudice at plaintiffs' costs.

CNH relies on Mr. Hayes' perpetuated deposition testimony prior to his death.[14]  In his deposition, Mr. Hayes testified that during his time on the farm, he worked around five (5) pieces of CNH equipment: two (2) Case model 1030 tractors, a Case model 1090 tractor, a Case model 1370 tractor and a Case model 700 combine.[15] With respect to the gasket work he performed, Mr. Hayes explained that the mechanics did the bulk of the work, and he and his dad would help them clean the valve covers by scraping them with a pocket knife or a putty knife.[16]  Mr. Hayes further testified that when scraping the valve gasket covers, dust would be created.[17]  CNH relies on materials science expert, Dr. William Longo who opined that:

> if, in fact, Mr. Hayes was scraping asbestos-containing valve cover gaskets, and this work activity produced visible dust, he would have been exposed to airborne asbestos fibers that exceeded ambient background levels. . . . **This opinion is based on the assumption that the valve covers that Mr. Hayes worked on did contain asbestos, and his work activity did produce visible dust.**[18]

CNH cites <u>Rando v. Anco Insulations, Inc.</u>[19] which provides that a plaintiff in an asbestos case "must show, by a preponderance of the evidence, he was exposed to asbestos and he received an injury substantially caused by that exposure." Where there are multiple alleged causes of injury, "a defendant's conduct is a cause-in-fact if it is a substantial factor generating

---

[14] CNH exhibit 1.
[15] <u>Id.</u> pp. 81-88.
[16] <u>Id.</u> pp. 15-16.
[17] <u>Id.</u>
[18] CNH exhibit 2, Report of Dr. William Longo (emphasis added).
[19] 16 So.3d 1065, 1088 (La. 2009).

plaintiff's harm."[20] [I]n an asbestos case, "the claimant must show … he had significant exposure to the product complained of to the extent that it was a substantial factor in bringing about his injury."[21]

Plaintiff contends that the following facts are not in dispute:

(1) Douglas Hayes grew up on a rice, cattle and soybean farm in Welsh, Louisiana.
(2) Mr. Hayes took over the farm and from 1969 through 1983; he performed routine maintenance work on the two (2) Case 1030 tractors on his farm.
(3) Mr. Hayes described removing gaskets from the tractors with a putty knife, which created dust that he breathed.
(4)  Mr. Hayes removed at least one gasket per tractor on a yearly basis.
(5) Mr.  Hayes **believed** that the gaskets contained asbestos.[22]

As noted by plaintiffs, the only factual issues involve identifying the substantial contributions to Mr. Hayes' total asbestos dose.  Plaintiffs rely on Landry v. Avondale Indus. Inc.,[23] wherein the Fourth Circuit affirmed the trial court's judgment granting plaintiff's motion for summary judgment in that (1) plaintiff was diagnosed with mesothelioma; (2) asbestos caused the mesothelioma; (3) mesothelioma was the cause of plaintiffs' death. However, the Fourth Circuit reversed the trial court's determination that (1) plaintiff was exposed to defendants' asbestos-containing products, (2) defendants' products were a substantial contributing cause of plaintiff's development of mesothelioma, and (3) defendants are liable under Louisiana law.  In so doing, the judge held that a determination regarding the amount of exposure emitted from a product, and whether an exposure is a substantial factor in causing

[20] Id.
[21] Rando, 16 So.3d at 1088.
[22] Emphasis added.
[23] 111 So.3d 508 (La.App. 4 Cir. 03/06/13).

disease, is a question of fact.[24] Thus, plaintiffs argue that the issue of the amount of exposure by CNH's product is a matter for the trier of fact.

Plaintiffs also rely on <u>Alberes v. Anco Insulations, Inc.</u>,[25] wherein the Fourth Circuit determined that there were genuine issues of material fact as to whether the plaintiff's exposure to asbestos containing gaskets at a facility was a substantial contributing factor to the plaintiff's contraction of asbestosis.[26] Plaintiffs note that in <u>Alberes</u>, the plaintiff was exposed to asbestos for a mere five (5) days while working on a turnaround. The Fourth Circuit concluded that asbestos-related cases focus on the quality of exposure versus the duration of exposure.[27] Again, plaintiffs rely on this case to support their position that the question of whether a plaintiff's exposure to asbestos-containing products was a substantial contributing factor to plaintiff's contraction of asbestosis, on which reasonable minds may disagree and should be left to be decided by the trier of fact. While we agree that the amount of exposure is a matter for the trier of fact, there must first be an exposure.

CNH remarks that plaintiffs' experts, Arthur Frank and epidemiologist Murray Finkelstein both based their opinion on the assumption that Mr. Hayes was exposed to asbestos when changing asbestos containing gaskets on CNH tractors for 13 years. However, the record does not support that assumption.

---

[24] <u>Id.</u> pp. 4-5.
[25] -- So.3d- - (La.App. 4 Cir. 12/10/14).
[26] <u>Alberes</u>, - - So.3d - - at *8.
[27] Plaintiff remarks that the <u>Alberes</u> case is an asbestosis case, not a mesothelioma case which has been determined to develop from relatively short high-intensity exposure to asbestos, as opposed to asbestosis, which typically develops as a result of relatively high exposure levels over a fairly long period of time. Citing <u>Egan v. Kaiser Aluminum & Chem. Corp.</u>, 677 So.2d 1027 (La.App. 4 Cir. 5/22/96); <u>writ denied</u>, 684 So.2d 930 (La. 12/06/96).

CNH provides the deposition testimony of Mr. Hayes wherein he testified that of the five tractors on the farm, he actually recalled working on two (2) Case model 1030 tractors.[28] He did not change out gaskets on the other tractors or the combine.[29] Consequently, CNH contends that plaintiffs' claim, if any, rests on the gasket work he performed on these two model 1030 tractors.  CNH relies on Mr. Hayes' testimony to show that his work on these two tractors was limited and occasional:

Q.      Specifically as to the two 1030s, what gaskets did you remove?

A.      It was either the valve cover – mostly valve cover gaskets.

Q.      Was there another type of gasket?

A.      If the oil pan gasket needed changing, then I would help them do that.  But I don't -- that's not a gasket you had to change a whole lot, you know.

Q.       Who would help you do that?

A.      The mechanic from Abell.[30]

        *                                    *                                    *

Q.      Did you have to do any work to get to those valve gaskets?

A.      No. He did all that.  If it -- if needed to be – something needed to be removed, he did all that. He actually took it off.

Q.      And what was your involvement?

A.      Just cleaning the gaskets off of the covers.

---

[28] CNH exhibit 1, Hayes depo. pp. 96-97.
[29] Id. pp. 97-99.
[30] Mr. Hayes explained that "Abell" was a local dealer that reportedly sold and serviced Case equipment.

7

Q.      And would the mechanic have you do that every time?

A.      Not necessarily.  Just when I was there to help him.

Q.      Can you give me a percentage of how often you were there to –

A.      About 75, 80 percent when they were working on stuff. . . . If I was there, I would just do it for him, help save time.[31]

Mr. Hayes then testified that he performed no other work on the model 1030 tractors that would have potentially exposed him to asbestos.[32] CNH then remarks that Mr. Hayes, as well as plaintiffs' expert, Dr. Longo, made the assumption that the valve cover gaskets Mr. Hayes changed, sometimes once a year on the two (2) 1030 Case tractors, contained asbestos. Mr. Hayes testified that he had no reason to believe that he was exposed to asbestos as a result of working on the model 1090 tractor, the model 1370 tractor or the 700 model combine.[33] Mr. Hayes testified as follows regarding the valve cover gaskets he helped change on the two (2) model 1030 tractors:

Q.      What   did   they   - -   what   type   of   material   were   they?

A.      It was - - I guess they were asbestos.  I don't know.

        They were a - - I don't want to say cardboard, but they looked like kind of a heavy-duty, cardboard-type gasket.

Q.      What leads you to say that those parts contained asbestos?

---

[31] CNH exhibit 1, pp. 89-91.
[32] Id. pp. 106-107.
[33] Id. pp. 97-99.

A.      Huh?

Q.      Why do you think that those parts contained asbestos?

A.      Just everything I've been hearing. I don't assume that they did or didn't.[34]

CNH asserts that there is no evidence that the Case model 1030 tractor valve cover gaskets Mr. Hayes helped change contained asbestos.   CNH submits the deposition of CNH representative, Stephen Burdette, who testified that the 1972 engineering drawing for the valve cover gaskets on the model 1030 tractor identifies the gasket material "as cork, the granular size is 16-40 mesh, and the ASTM number coordinates with the SAE number and that number identifies it as cork. . . ."[35] Burdette further explained:

> I have no reason to believe that the drawing before it was not cork, that it probably was cork, which was a common material used for valve cover gaskets  and  [was]  used  in  valve  cover gaskets in much older Case machines built in the '40s and '50s. . .
>
> I can tell you characteristically that the research that I did do led me to believe that the prior gasket was probably cork because all of the valve cover gaskets that I researched on many of their machines dating from the '40s forward to '72 were made of cork and I found no exceptions in that as I went through the various engine designs.[36]

CNH maintains that plaintiffs have failed to carry their burden of proof that the model 1030 tractor valve cover gaskets that Mr. Hayes described scraping contained asbestos because plaintiffs have failed to submit any supporting evidence.  CNH remarks that plaintiffs' expert reports assumed that the gaskets Mr. Hayes described scraping contained asbestos.

---

[34] Id., p. 96, lnes. 10-21.
[35] CNH exhibit 6, Stephen Burdette, p. 14.
[36] Id. at pp. 18-19.

Plaintiffs contend that there is a disputed issue of material fact as to whether or not the valve cover gaskets contained asbestos, and that Mr. Hayes' work with the asbestos containing gaskets subjected him to above background concentrations of asbestos resulting in Mr. Hayes' development of mesothelioma and subsequent death therefrom. Plaintiffs admit that Mr. Hayes worked with more valve-cover gaskets than oil-pan gaskets.[37]

In an attempt to create a genuine issue of material fact, plaintiffs submit drawings of valve cover gaskets which list all changes to the composition. The gasket identified is part number A156960.  The drawing contains an "added note" from April 19, 1990 which states: "MATERIAL: NOTE: NON-ASBESTOS MATERIAL."[38]

Burdette explained that the added note in 1990 was part of the overall asbestos removal program the company was following.[39]   However, plaintiffs challenge Burdette's credibility and speculate that it is more likely that in 1990, CNH was in the process of an asbestos removal program and that particular valve cover was being changed from asbestos to non-asbestos.

To buttress their contention that the valve cover gaskets contained asbestos, plaintiffs submit as evidence an Engineering Change Notice (ECN: C890097Z) issued on May 4, 1990.[40] The second page of the notice provides as follows:

> **CHANGE:     RELEASED    NON-ASBESTOS    GASKETS,    KITS,
> DISPLACING   ASBESTOS    TYPE    PREVIOUSLY
> SPECIFIED.**

---

[37] Plaintiffs' opposition to motion for summary judgment, p. 7, R. #112.
[38] Plaintiffs' exhibit 3, valve cover gasket drawing.
[39] CNH exhibit 6, Burdette depo. p. 17, R. # 86-9.
[40] Plaintiffs' exhibit 4, CNH Engineering Change Notice dated May 4, 1990.

REASON:        PRODUCT IMPROVEMENT

ASBESTOS REMOVAL PROGRAM.

ORIGIN OF REQUEST:        COMMITTEE

CHANGE TO TAKE EFFECT: WHEN DISPLACED STOCK IS

EXHAUSTED.[41]

From this evidence, plaintiffs argue that the valve cover gaskets (A156960) were changed from asbestos containing and were displaced with a non-asbestos version which they assert creates a genuine issue of material fact for trial.

CNH provides Burdette's testimony and the specific engineering drawings which show that the original valve cover gasket material for the valve cover gaskets used on Case model 1030 tractors was cork material, not asbestos.  Drawing A27972, "would have been used on earlier Case model 500 tractors dating from 1953.  And it's a cork gasket. Material is specified as cork."[42] Drawing A27972 was replaced with Drawing A57595 which Burdette explained "would have been installed at certainly the first production [of the model 1030 tractor] because this was released in 1967."[43]  Drawing A57595 was replaced with Drawing A65734 on the 1030 tractor and the drawing's material specification (F226100M2) is "an ASTM classification number for cork material.  An equivalent number would be SAE J90P2261."[44] In 1990, a note was added to the drawing to confirm that it was a "non-asbestos material."[45] Drawing A156960 replaced A65734 in 1981 which was redesigned but did not involve a material change and further noted

---

[41]  Plaintiff's exhibit 4, CNH Engineering Notice dated May 4, 1990.
[42]  CNH exhibit 9, p. 182.
[43]  Id., p. 180 referencing exhibit 11 (drawing A57595).
[44]  CNH exhibit 9 at pp. 181 and 167 referencing drawing A65734, CNH exhibit 12.
[45]  Id. at p. 188.

that the gasket was "non-asbestos material."[46] Each of these engineering drawings consistently specifies that the materials used for the valve cover gaskets was cork; there have been no drawings submitted which denotes asbestos as a material. Burdette testified that the drawings reveal that the entire time that Mr. Hayes was working with his two (2) Case model 1030 tractors, the gaskets were "cork or a cork hyphalon mixture.   And those are non-asbestos."[47]

CNH also refers the court to plaintiff's expert, Dr. Longo, who admitted that after reviewing all of the drawings, he "didn't see any indication that [the valve cover gasket] did contain asbestos or it did not."[48]     As noted by CNH, other than speculation, plaintiffs offer no evidence to dispute the fact that the valve cover gaskets for the 1030 tractors were made of anything other than non-asbestos material. The court finds that there is no genuine issue of material fact that the valve cover gaskets for the Case 1030 tractors were made of non-asbestos material, and thus could not have exposed Mr. Hayes to asbestos.

With respect to the oil pan gaskets, CNH contends that plaintiff has failed to submit or direct the court to any evidence to prove that Mr. Hayes was exposed to any asbestos from the oil pan gaskets. CNH concedes that Burdette testified that he did not know whether the model 1030 tractor oil pan gaskets contained asbestos. However, in its supplemental discovery responses, CNH confirms that the oil pan gaskets contained asbestos.[49]   CNH submits Mr. Hayes' deposition testimony which reveals that the oil pan gaskets were not changed very

---

[46] Id. at p. 170 referencing exhibit 13 (drawing A156960).
[47] Id. p. 191.
[48] CNH exhibit 8, Longo Depo. p. 50.
[49] CNH exhibit 7; CNH amended responses to plaintiffs' interrogatories and requests with document production.

often.[50] CNH then relies on Longo's expert opinion wherein he was unwilling to opine that the

oil pan gaskets substantially caused Hayes' illness and death:

> I don't recall reading in there if he talked about exactly how he removed those gaskets – and he didn't do it that often – how he removed it, did he do it the same way as the oil pan, did he see dust, if that is correct, then yes, he would have had an above background exposure.
>
> But I don't believe that information is in there, so I don't have an opinion about his potential exposure. And I'm not sitting here trying to say that when he removed those oil pan gaskets he had a significant exposure.[51]

"Evidence of the mere physical presence of asbestos-containing material is insufficient to

find a manufacturer liable to a plaintiff."[52] The court notes that Dr. Longo had no opinion in his

report as to Mr. Hayes' alleged exposure to asbestos from the oil pan gaskets.[53] The court further

notes that the Finkelstein report does not suggest that Mr. Hayes was exposed to asbestos from

the oil pan gaskets.[54] Dr. Frank summarily states that Mr. Hayes "had significant exposure to

asbestos while working on his family farm…"[55] However, there is nothing in his report or letter

that ties Mr. Hayes' alleged exposure to the oil pan gaskets

There is no evidence or testimony in the record to prove that Mr. Hayes inhaled or was

exposed to asbestos from his handling of the oil pan gaskets. Mr. Hayes' deposition testimony

---

[50] CNH exhibit 1 pp. 90-93.
[51] CNH exhibit 8, Longo depo. p. 56.
[52] Thibodeaux v. Asbestos Crop. Ltd.  976 So.2d 859, 867 (La.App. 4th Cir. 2008).
[53] See Longo expert report, R. #86-5; CNH exhibit 8, Longo depo., R. #86-11 p. 53,56.
[54] See CNH exhibit 4, M. Finkelstein, PhD MD, expert report, R. #86-7 which provides in pertinent part the following:
    Summary of Asbestos Exposures:
      1. Scraping of valve cover gaskets on Case tractors . . about 75 occasions
      2. Domestic exposure to fibers brought home on his clothing, and his fathers'.
      3. Exposure to dust from friction products at Oustalet Ford (P. 3.)
[55] CNH exhibit 3, p. 1.

only states that they "didn't have to be changed very much...."[56]  He does not explain or suggest how he handled the oil pan gaskets, nor does he suggest that the oil pan gaskets created dust and that he inhaled that dust.

The court finds that there is no genuine issue of material fact that the valve cover gaskets were not the source of asbestos because they were made of cork material.  We further find that there is no evidence in the record to show that Mr. Hayes was exposed to asbestos from the oil pan gaskets.

**CONCLUSION**

Plaintiffs have failed to create a genuine issue of fact for trial as to Mr. Hayes' exposure to asbestos from any CNH products.  Accordingly, the court will grant CNH's motion for summary judgment and dismiss with prejudice this defendant, and judgment will be rendered in accordance with the court's rulings made herein.

**THUS DONE AND SIGNED** in ~~Lake Charles~~ Alexandria, Louisiana  on  this  28th day of _____ May _____, 2015.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[56] CNH exhibit 1, Hayes depo., p. 93.