RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
5 / 28 / 15
JT

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | |
|---|---|
| **DOUGLAS L. HAYES** | **CIVIL ACTION NO. 2:13-2392** |
| **VERSUS** | **JUDGE JAMES T. TRIMBLE, JR.** |
| **ASBESTOS CORP. LTD, ET AL** | **MAG. JUDGE KAY** |

## MEMORANDUM RULING

Before the court are two (2) motions: "Motion for Summary Judgment Regarding "Reasonably Anticipated Use" on behalf of Honeywell International, Inc."("Honeywell") (R. #88) and "Ford Motor Company's ("Ford") Motion for Summary Judgment on the Issue of 'Reasonably Anticipated Use' Under the Louisiana Products  Liability Act" (R. #89).Defendants, Honeywell and Ford, maintain that the brake drum blow out procedure,[1] used by Bubba Oustalet Dealership ("dealership"), Douglas Hayes' employer, was not a "reasonably anticipated use" of defendants' products; specifically this procedure and/or any other procedure that was contrary to Ford's express instructions and warnings was not a "reasonably anticipated use of defendants' products.  Thus, Honeywell and Ford argue that they cannot be held liable under the Louisiana Products Liability Act ("LPLA") for harm allegedly resulting from those practices.

## STATEMENT OF FACTS

Plaintiffs, Chad Hayes and Christopher Hayes, have sued several defendants alleging exposure to asbestos caused their father, Mr. Hayes, to suffer and die from Mesothelioma. Mr.

---

[1] Plaintiffs allege that this procedure was used by a mechanic performing a brake job; the mechanic would use high pressure compressed air to remove worn brake dust from within brake drums -- referred to as "brake drum blow out".

Hayes worked as a car salesman at the Bubba Oustalet dealership (the "dealership") from 1993 to 2013. The dealership sells Ford and Toyota cars and light struck and various used vehicles. Honeywell is the successor in interest to Bendix Corporation, which was one of several manufacturers to supply brake parts for Ford's vehicles as original and replacement parts. None of the other suppliers have been sued in this lawsuit.   The dealership service department repairs all makes and models of vehicles.

Mr. Hayes did not make repairs to vehicles, nor did he assist the mechanics at the dealership or elsewhere.  He spent most of his day in the new car showroom which was an air-conditioned room separate from the repair shop.  Mr. Hayes spoke with mechanics in the shop once or twice daily for 10 to 15 minute intervals to check on a client's vehicle.

In 1972, the Occupational Safety and Health Administration ("OSHA") enacted a series of regulations designed to impose controls on workplace exposures to asbestos throughout the industry. From 1975, nearly two decades before Mr. Hayes began working at the dealership, Ford repeatedly provided numerous written instructions and warnings to its dealerships, including Oustalet which includes, but are not limited to the following:[2] to refrain from using compressed air to clean brake assemblies for the explicit purpose of minimizing dust generation

---

[2] Ford exhibit D, Technical Service Bulletin ("TSB") No. 99 dated 10/24/1975 Ford exhibit D attached to 30(b)(6) depo. of Matthew Fyie, pp. 46-47; TSB No. 99, p. 8; Ford exhibit F, TSB No. 83-22, p. 7; Ford exhibit G, Ford Motor Company Package Material Specification L5-1516 and accompanying photographs of boxes with the warning label affixed; Ford  exhibit H, Ford Motor Company Package Material Specification l01516, 1987 revision; Ford exhibit I, excerpts from Ford Motor Company 1983 Truck Shop Manual, Ford exhibit J, excerpts from Ford Motor Company 1984 Truck Shop Manual; Ford exhibit K, excerpts of Ford Motor Company 1985 Car Shop Manual, Ford exhibit L, excerpts from Ford Motor Company 1986 Car Shop Manual, Ford exhibit M, excerpt Ford Motor Company 1987 Car Shop Manual; Ford exhibit N, Ford Motor  Company 1988 Truck Shop Manual; Ford exhibit N, excerpt Ford Motor Company 1988 Truck Shop Manual, Ford exhibit O, Ford Motor Company, 1990 Truck Shop Manual; Ford exhibit P, excerpt Ford Motor Company 1991; Ford exhibit P, excerpt Ford Motor Company 1991 Truck Shop Manual; Ford exhibit Q, excerpt Ford Motor Company 1989 Car Shop Manual; Ford exhibit R, excerpt Ford Motor Company 1992 Mustang Service Manual; Ford exhibit S, excerpt Ford Motor Company 1993 Mustang Service Manual.

and the potential for exposure to asbestos.  Ford instructed its dealerships to use a vacuum cleaner that was suitable for use with asbestos fibers, and to dispose of the dust and dirt in a manner that prevented dust exposure.  Ford further gave instructions to cordon off areas dedicated to brake service, to prominently place warning signs and to prevent non-essential personnel from entering the area. Ford warned that exposure to asbestos fibers present on automobile and truck brake and clutch assemblies were hazardous to one's health when made airborne with compressed air or dry brushing.  Ford instructed the dealerships to post signs warning of the hazards of asbestos, to avoid breathing the dust, to wear assigned protective equipment, and to not remain in an area unless one's work required it. Ford expressly and specifically warned against the use of air compressor hoses to remove dust or dirt. Ford also warned its dealers that if the dust could not be minimized through the use of vacuum hoses, a high-efficiency cartridge or airline respirator should be used. Ford also warned that if a vacuum was not available, cleaning should be done wet, and if that procedure generated dust, the technicians should wear government-approved toxic dust purifying respirators.   Ford   asserts that it did not have either actual or constructive knowledge that Oustalet mechanics used compressed air to blow out dust from the brake drums or any procedure in direct contravention of these warnings and instructions.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law.[3] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[4] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[5] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the on-moving party's claim."[6] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[7]  The burden requires more than mere allegations or denials of the adverse party's pleadings.   The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[8] There is no genuine issue of material fact if, viewing the evidence in the light more favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[9] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.[10]

## LAW AND ANALYSIS

Honeywell is the successor in interest to the Bendix Corporation, one of the suppliers that provided asbestos containing brake shoes to Ford. Ford sold certain vehicles to   the dealership where Mr. Hayes worked from 1993 until his death in 2013.  Plaintiffs allege that Mr.

---

[3] Fed. R. Civ. P. 56(c).
[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
[5] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).
[6] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).
[7] Anderson, 477 U.S. at 249.
[8] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[9] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[10] Anderson, 477 U.S. at 249-50.

Hayes was exposed to asbestos when mechanics performed a "brake drum blow out" procedure on an asbestos containing brake drum. Honeywell and Ford maintain that plaintiffs cannot show that as of 1993, the brake drum blow out procedure was a "reasonably anticipated" use of their brake products. Thus, because this procedure was not a "reasonably anticipated" use of Honeywell or Ford products, neither defendant can be held liable for harm allegedly resulting from the practice.

Louisiana Revised Statute 9:2800.54 (A) provides as follows:

> The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a ***reasonably anticipated use***[11] of the product by the claimant or another person or entity.

The LPLA defines "reasonably anticipated use" as "a use or handling of the product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances."[12] Honeywell relies on the repeated warnings sent out by Ford for years prior to 1993 to dealerships warning and instructing the mechanics to avoid "brake drum blow out," the dangers of asbestos, as well as the OSHA compliant instructions on how to safely remove asbestos containing brake parts. Thus, Honeywell argues that under an objective standard, it would not have a basis to anticipate that as of 1993, a car dealer would still be performing a work practice which had for so long been the subject of such advice.

Plaintiffs maintain that there are disputed issues of material facts as to: (1) whether the warnings allegedly provided regarding the process of using compressed air to clean asbestos

---

[11] Emphasis added.
[12] La. R.S.9:2800.53(7).

dust from brake assembly parts (brake drum blow out(s)) were adequate and received by the mechanics at the dealership, (2) whether it was common place in the industry to use brake drum blow outs in the early to mid-1990s, (3) whether defendants knew or should have known that those warnings were being disregarded by the mechanics at the dealership, and (4) whether the alternative brake job procedure defendants claim to have used while Mr. Hayes worked at the dealership could have caused a significant exposure to asbestos.

Mr. Hayes testified in his deposition that he thought that he had been exposed to asbestos from being in close proximity to brake operations.[13] Of significance, Mr. Hayes testified that he "assumed" they were using asbestos brake parts.[14] Mr. Hayes further testified that he was present during hundreds of brake jobs, and that most of his customers would bring their vehicles to the dealership for service.[15] He also testified that the use of compressed air hoses was "[j]ust to clean everything up."[16] He did not associate the use of compressed air hoses with brake removal jobs.

Richard Oustalet, the owner of the dealership testified in his deposition that some brake products that were original equipment contained asbestos.[17] Mr. Oustalet also testified that he became aware of the dangers of asbestos in the 1990s, even though he could not pinpoint the exact date.[18]   Oustalet testified that some mechanics were using compressed air to perform

---

[13]  Plaintiffs' exhibit A, Hayes depo. p. 20.
[14] Id., p. 21-22.
[15] Id. pp. 23-24.
[16] Id.
[17]  Plaintiffs' exhibit B, Oustalet depo. p. 29; Plaintiffs' exhibit C, Matthew Fyie depo.,  pp. 22-25; Plaintiffs' exhibit E (R. #88, para. 5).
[18] Plaintiffs' exhibit D; Plaintiffs' exhibit B, pp. 33-36.

brake jobs.[19] While Oustalet did not recall learning from the defendants about the dangers of asbestos, nor did he personally see any of the defendants' warnings, he did specifically remember being informed by OSHA of the potential asbestos problem with brakes in the mid-1990s.[20] He also testified that the dealership received instructions and warnings from Ford pursuant to repair manuals and TSBs, and that the service technicians were expected to perform repair services pursuant to and in compliance with repair manuals and TSBs sent by Ford.[21] Mr. Hayes also testified that he did not see defendants' warnings about potential asbestos problems with brakes.[22]

Plaintiffs further rely on the testimony of Matthew Fyie, Ford's corporate representative, who testified that Ford did not have a practice of inspecting Ford Dealerships to ensure that they were following proper protocol with respect to dealing with asbestos.[23] Mr. Fyie testified that such would be the responsibility of the dealership and OSHA.[24] Thus, plaintiffs argue that there is a genuine issue of material fact regarding whether Ford's warnings were adequate to alert the dealership to the dangers of brake drum blow outs relying on Kampen v. American Isuzu Motors, Inc.[25]

---

[19]  Plaintiffs' exhibit B, pp. 35-36.
[20]  Id., p. 38.
[21]  Defendant's exhibit C, Oustalet depo. p. 13:23-14:12.
[22]  Plaintiffs exhibit A, p. 25.
[23]  Plaintiffs exhibit C, pp. 42-43.
[24]  Id.
[25]  157 F.3d 306 (5th Cir. 1998)(a warning about product misuse is relevant to assessing what uses of a product a manufacturer should reasonably anticipate; if a manufacturer knows or should know that users are disregarding the warnings when using the product, that prohibited use is considered to be a reasonably anticipated use).

Plaintiffs also submit the testimony of their expert, William E. Longo, Ph.D., who identified brake drum blow outs as "a very common work practice used by brake mechanics."[26]

Honeywell cites Kampen, wherein the court held that the analysis to determine a reasonably anticipated use under the LPLA is an "objective inquiry" which focuses on "what uses of its product the manufacturer should have reasonably expected at the time of manufacture."[27] Honeywell argues that plaintiffs' evidence that relies on the testimony of workers at the dealership regarding the use of brake drum blow outs during the 1990s is irrelevant because the proper objective inquiry is the expectation of a manufacturer at the time of manufacture.[28] Thus, plaintiffs' use of the end users practices – the dealership-- does not constitute objective evidence that a manufacturer should have reasonably anticipated the use.

Honeywell submits the affidavits of Richard Oustalet[29] and Arden Killmer to show that this procedure was not being utilized when Mr. Hayes was employed at the dealership. In its attempt to establish the universal knowledge about the dangers of asbestos and the need to avoid disturbing such materials in a manner which would release dust, Honeywell submits the deposition testimony of Mr. Hayes' son, Chad Hayes. Chad Hayes testified that he learned from his co-workers in the field of telecommunication cables installations, of the dangers of asbestos.[30]  Honeywell also cites Sturlese v. Six-Chuter,[31] wherein the Third Circuit identified

---

[26] Plaintiffs' exhibit D, Supplemental Expert Report, p. 6.
[27] Kampen, 157 F.3d at 309.
[28] Kampen, 157 F.3d at 309.
[29] Honeywell exhibit D, Oustalet depo.; Honeywell exhibit E, Arden Killmer depo.
[30] Honeywell exhibit F, Chad Hayes depo. p. 9-10.
[31] 822 So.2d 173 (La.App. 3 Cir. 6/26/02), writ denied, 829 So.2d 1049.

that a key part of "the real contest" was whether plaintiffs' damages arose "from a reasonably anticipated use of the product by the claimant or another person or entity."

Honeywell contends that plaintiffs' use of Dr. Longo's expert opinion that brake drum blow out "was a very common work practice used by brake mechanics"  is inadmissible and insufficient to create a dispute of material fact to preclude summary judgment because Dr. Longo is not qualified to render this opinion regarding the prevalence of automotive industry practices.   Honeywell remarks that Dr. Longo has been qualified to offer expert testimony as a material scientist and microscopist and is not an expert in automotive engineering, car dealership operations, or an industrial hygienist. Thus, lacking such expertise, he cannot opine on the prevalence, if any, of that industry's practice or custom. Honeywell further submits that Dr. Longo's assertion lacks any factual basis or support.

Honeywell refers the court to Dr. Longo's expert opinion which states that there were studies performed back in the 50's, 60s and 70's when the Federal Government was pushing the industry to get people to quit using compressed air.[32]   Thus, Honeywell suggests that Dr. Longo's expert reports actually support defendants' position that this practice was not a reasonably anticipated use by the 1990s and 2000s.

More significantly, Honeywell and Ford argue that plaintiffs have failed to offer any factual or expert testimony that Bendix (now Honeywell) and Ford knew or should have known that brake drum blow out was a practice being used in contravention of Ford's numerous warnings, laws and regulations, and prevailing practices.

---

[32] Honeywell's exhibit C.

Notably, we find that plaintiffs' reliance on <u>Savant v. Beretta USA, Corp.</u>[33] is misplaced In <u>Savant</u>, there was evidence from four lay witnesses regarding the handling of a shotgun at issue in the case, two professional hunting guides regarding the standard practice and regular habits of hunters and use of the shotgun, a registered professional engineer regarding the adequacy of the warnings at issue, and the past president of a gun maker's guild opinion that the usage of a shotgun was considered reasonably anticipated by gun manufacturers. There is no such evidence in the record about the use of the blow out procedure while performing brake jobs.

In the alternative, plaintiffs maintain that if the court determines that defendants' warnings were adequate, and the dealership's use of the product was not a reasonably anticipated use, Dr. Longo testified that the use of a liquid brake cleaner from an aerosolized spray would be a significant exposure to asbestos 1000 times above background levels.[34] Dr. Longo opined that this procedure could also have caused a significant exposure to asbestos, and therefore precludes this court from granting summary judgment.

Honeywell and Ford argue that there is a complete lack of evidence in the record to suggest that the mechanics used an aerosol spray while performing brake jobs. Therefore, whether or not such use could expose one to asbestos is irrelevant because there is no evidence that Mr. Hayes was ever exposed to asbestos in that manner. We agree with defendants that there is no evidence in the record that the mechanics at the dealership used an aerosol spray while performing a brake job in Mr. Hayes' presence.

---

[33] 2007 WL 1068481, at *9-10 (W.D. La. 2007).
[34] Plaitniffs' exhibit E, pp. 61-62.

The court finds that there is no genuine issue of material fact. If in fact the mechanics used the drum blow out procedure, this was not a reasonably anticipated use.  Furthermore, Honeywell and Ford are correct in that there is no evidence in the record that the mechanics were using an aerosolized spray as expressed by Dr. Longo, and if there was this procedure was also not a reasonably anticipated use of the defendants' products.

## CONCLUSION

For the reasons set forth above, the motions for summary judgment will be granted, dismissing with prejudice, plaintiffs' claims against defendants, Honeywell International Inc. and Ford Motor Company, and judgment will be rendered in accordance with the court's rulings made herein.

THUS DONE AND SIGNED in ~~Lake Charles~~ Alexandria, Louisiana on this 18th day of _____May_____, 2015.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE